Case number 23-1677 from the Western District of Arkansas, Human Rights Defense Center v. Union County, Arkansas, et al. Mr. Pultz? Your Honors, and may it please the Court, my name is Charles Pultz and I'm here today on behalf of Appellant Human Rights Defense Center, or HRDC. I'd like to begin today by directing the Court's attention to page 1361 of the party's joint appendix, which is quoted in part in HRDC's brief. Page 1361 contains the trial testimony of Union County Sheriff Ricky Roberts, who was asked, and I quote, you don't even search the stuff that comes from publishers because you're not concerned about contraband coming from them. Is that right? Sheriff Roberts responded unequivocally, right. Union County has advanced two purported penological interests that it asserts are rationally connected to the total book and magazine ban that is implemented in this case. The first is the prevention of contraband, which, as Sheriff Roberts told you, they are not concerned about when mailings are sent directly from publishers to prisoners. Let me ask a preliminary question. Your brief almost totally ignores what seems to me the most important part of the record, the jury verdict. And would you agree that although the ultimate question is one of law applying the Turner factors, on the specific factors themselves, which are fact intensive, we have to assume that the jury made every finding that's relevant adverse to your position? Your Honor, there are no disputed facts on appeal here. Wait a minute. Every Turner factor is fact intensive. Your Honor, it's a mixed question of fact and law, but as this court held in Iron Eyes, those mixed questions are reviewed here on de novo review. And that was a Turner v. Safely? Yes, it was, Your Honor. Iron Eyes decided in our brief it involved a hair length regulation. What case? It's Iron Eyes v. Henry, I believe, is the case. And it says we reviewed de novo after a jury verdict? It says the Turner factors are mixed questions of fact and law, and if there is no dispute of material fact, then the court applies de novo review to the ultimate constitutionality of a policy. But we would take all the facts in the light most favorable to the sheriff in this case, or the county, because of the verdict, right? Certainly, Judge Colleton. And, again, I say there are no disputed facts in issue here. Iron Eyes is a great ---- I don't know what you mean by that. There were disputed facts in the trial. Yes, and I will again direct ---- You're saying there's no disputed facts now because they were all resolved against you. The ultimate question that the jury was asked to decide, if you take a look at jury instruction 10 and 11, 11 referring back to 10, the jury was asked to decide a question of law. It was asked to decide the Turner ---- It was asked to make the Turner analysis, which as, again ---- It was asked to make findings on each of the four factors, and then an ultimate decision. The ultimate question here, again, is a question of law. I started there. Yep. But whether alternatives are available is fact intensive. Whether this has any impact on the amount of contraband or on correction officer time, those are questions of fact. Again, Your Honor, I disagree. The precedent is clear that these are mixed questions of fact. The precedent is not clear. I can guarantee you that. Okay. Your Honor, again, I will contrast this with the Iron Eyes case. In Iron Eyes, there was a legitimate factual dispute that was brought up on appeal. Whether or not the appellant in that matter had a sincerely held religious belief. In that case, the court looked as to whether or not that factual finding could be upheld under a clearly erroneous standard. Upon resolving that issue, they applied question of law to the remainder of the Turner factors, which, again, are mixed questions of fact and law, but the court applied de novo review to them. Well, what was the point of the trial here, then? You say the issue that went to the jury was a legal issue that we reviewed de novo. So what was the point of the trial? Your Honor, we moved for summary judgment, as well as had renewed motions for judgment as a matter of law. The jury was asked to decide issues, so trial or appeal. So you're appealing basically the denial of your motion for summary judgment. And the judgment as a matter of law, Your Honor, which is the order on appeal, and it's contained in our addendum. So your position is the case should not have gone to trial because it's just a legal issue? This is a legal issue. But, again, if there were questions of fact, which my friend hasn't identified one that were disputed here, then we would need to resolve those. But this is, again, Did you object to the jury instructions and say we should only have special interrogatories on factual questions? We did not, Your Honor. But, again, we had had a summary judgment motion denied as well as two motions for a matter of law, an initial one and a renewed one that were denied. I think, again, Well, there aren't many appeals from the denial of summary judgment that survive a trial. And, Your Honor, if I can be clear as well, I think if there was some other standard that was applied, again, my friend doesn't offer one, we would still win under that clearly erroneous standard because no reasonable jury, as a matter of law based on the factual record in front of the court, could be upheld on appeal here. But, again, I draw this Court's attention to ironized and related cases where unless there's a disputed fact, such as, again, the legitimacy of the appellant's religious beliefs in ironized, then it is entitled to de novo review in its entirety. Well, let's talk a little bit about the evidence. The jury had to decide under, I think it's jury instruction number 10, right, the questions that they had to answer. Most seem very fact-based. For example, were there alternative avenues available for your client to communicate the speech in its mailing? So that's, I'm assuming that there was competing testimony presented there? Yes, Your Honor, but I would, again, I would argue that, you know, ultimately whether or not something is an alternative or not has been decided as questions of law in other cases. What other cases? This Court's opinion in Baxter County focused solely on whether or not there was... And remanded. And remanded. For a trial, which was held. Yes. And then, Your Honor, but... I assume it's being appealed, too. Right, and the Court also said in that case that de novo review would apply on appeal. Who decided? I believe, sorry, Your Honor, I'm getting my cases confused. Again, returning to your question, Judge Kelly, yes, I believe there were some factual questions. But, again, Turner is a mixed question of fact and law. So the extent that we're... Don't we have to, in looking at a verdict, once this has gone to the jury, and I understand your position it should not have gone to the jury, that you should have won earlier. But once it's there, and it turns out that it's the jury who has to decide, I'm just using this example. There must have been some... Was there something in there that the jury could have concluded, oh, yeah, there's an alternative avenue. Like there's something in the record. And maybe this is a question for counsel for appellee. Your Honor, we don't think there was anything in the record that would have supported that. So instead of saying it's... That there's no disputes of fact, you're just saying it's clearly erroneous to find that there were. That is when reading... I'm sorry, no reasonable jury could have found. I apologize. Right, and if you look at that jury instruction, it is four factors. It's unclear which one the jury ruled on. It is entirely... That's why we must infer they ruled on all of them, adverse to your client. Right, to the extent that they ruled on factual issues as part of the Turner analysis. But again, there are legal questions presented by those factors, your Honor, that a jury is not prepared to deal with. Says you. Says the court. I can understand why your client doesn't like jury trials. But that doesn't mean they aren't legitimate and worthwhile. Are you just saying sort of as a matter of law, there is just not enough evidence in this record? Is that really your position? That is an alternative position, Judge Kelly. I'm sorry, but again, I think as a matter of law, the constitutionality of the policy implemented by appellee, it can be decided as unconstitutional as a matter of law. And there is no need for deference to the jury of any kind. The ultimate question is the constitutionality. Again, the Iron Eyes case and others are... You know, your citation to Iron Eyes is false. I mean, you say see page 17. And on page 17, there is no reference to Iron Eyes. And then it comes over on page 18. Court reviews de novo application of the Turner factors to its factual findings. Agreed, Your Honor. Yes, but what are those factual findings? Anything that's factual... Your Honor, again, Iron Eyes is a clear example where, again, the factual issue of the dispute in that case was whether or not the prisoners' religious beliefs were sincerely held. And then the remainder of the facts that were undisputed were then analyzed by the court for their constitutionality on a de novo standard. Your Honors, if there are no further questions at this time, I'd like to reserve the remainder for rebuttal. I have something else to... Did you have another question, Your Honor? Yeah, I thought... Wait, where is it? I thought it was on page 35. I thought there was an assertion in your brief that the ruling in Baxter County was clearly unconstitutional. And I wondered who authored that one. Since if... The remainder, Your Honor? Oh, I think it's page 36, footnote 5. Baxter's holding that HRDC has reduced Fourth Amendment rights is unconstitutional. I agree, Your Honor. And so we're not allowed to follow it? That's an argument for the in-bank court. I'm sorry, Your Honor. Don't you know by circuit law that one panel cannot refuse to follow another? Your Honor, we have to present the issue on appeal. We can't force it. With an issue where you're telling one panel that a prior panel got it wrong, you have to state that and state this argument is being made for the in-bank court. That's the proper way to do it under a circuit law. So you're... I mean, and I was on the panel that did this plainly unconstitutional, terrible act. What does it mean that the Baxter holding is unconstitutional? Do you mean it was wrong? Yes, Your Honor, that is what it was unartfully worded, but we disagree with the hold. But you can't argue it to the panel anyway. You just drew the misfortune of having someone from that panel on this panel to get mad about it. Understood, Your Honor. You've got to be careful. With that, I'll reserve the remainder of my time. Mr. Newell? Yes, may it please the Court, Counsel. I think the big problem that my opponent was trying to find with Baxter at page 18, Baxter in the Cape Girardeau case, all of the cases looking at this tortured issue over the past five years have been bench trials. My case is the only one that was a jury trial. So I think that's why he... I think that's a huge difference between Baxter, Simpson, and Cape Girardeau in my particular case. And this is the odd case where the plaintiff, HRDC, with the burden of proof, to prove that Union County's policies were unconstitutional, requests a jury trial. And then after three days of testimony, and they called all their witnesses, they called nobody that was a detainee as a witness, nobody that was a family of a detainee. They called the executive director of HRDC and an expert witness in penological customs and practices named John Clark. And then they called my sheriff and my jail administrator. Three days' testimony. And then they make a 50-A motion to the judge and says, wait, wait, wait, we really don't need the jury. After all this, we really don't need the jury. We just want you to rule in our favor that there's no way, there's no fact that could support their defense when we have to prove by a preponderance of the evidence that their policy is unconstitutional. It's rarely seen, of course. Typically, it's the defendant making the motion that the plaintiff hasn't proven his case. In this case, it was the plaintiff moving, saying, we so clearly won on the facts that we don't even want the jury to give us their view now. And the judge says, not so fast. There are a lot of facts here I see in dispute. It's going to the jury. It goes to the jury, comes back, unanimous, of course, for the defense. Then they move under 50-B and say, judge, there's not, under the Rather v. Kare 11 case, there has to be, there has to be. Can I ask you about some of the evidence that was at the trial? If you want to finish your point, I kind of want to get into the meat of some of this. That's great. I was just going to say, judgment as a matter of law is proper only when the evidence is such that, without weighing credibility, there is a complete absence of probative facts to support the verdict. I'd just like to talk to you about some of the evidence that came in on the various factors for their claim, the First Amendment claim. And we sort of touched on the one about the available alternative avenues for HRDC to communicate with the folks they wanted to communicate. And as I understood, at least in the post-trial order from the district court, the court relied on the idea that, well, maybe HRDC can't communicate with these particular inmates, but they can to the 309 prisoners, and that's sort of sufficient. Is that right? Because I don't know that that's the case in sort of Simpson, when it's an individual, it's a family member. Is that a pivot that you can make as a legal matter for the alternative means that you can communicate with someone else? I think she was just pointing out that it's not, contrary to their arguments over and over, we did not have a complete ban on publications in the facility. We do have a restriction against paper, multi, bulk mailing in the jail because the record is full of instances why we do that. And was this a mass mailing? You said bulk mailing, I think you called it. Someone mentioned that these were actual subscribers, that there were 15 folks at the jail who had subscribed. Is that in the record? There is mention to 15 people in the record, but this was all unsolicited. HRDC went on the website, got the names of 15 pretrial detainees, sent them individualized packages, but each package had three different publications to strangers. They were soliciting, they were going to solicit subscriptions, but they did the same thing in Baxter County the same year. The exact same thing. One of the alternatives was, well, you can put your material on postcards. Is that the only alternative? It seems a little unrealistic, but that seems to be the only alternative for communication. Do I understand the record? You do. You have so many other records to look at. I only have this one, so I think I can clear that up. The precedent from this circuit is that you can't have a complete ban on communication with the outside world. There is not a holding that says you have to let a publisher put in whatever that company wants to put in. That's the distinction you said, communication with the outside world. That's the Simpson, the case of the person on the inside wanting the communication with the out. Here we've got the company on the out wanting communication with the in. I'll just toss that out there to the extent that that is important in your analysis or in our analysis. It is. It's like Judge Loken pointed out in his dissent in the Baxter case that if you're not careful, you'll put the rights of a publisher ahead of the rights of the mother and the family member in Simpson. That's, I believe, if I may have put it that way. Let me back up. I thought in my recollection in Baxter County is there were no subscribers. I missed that a while ago, Judge Kelly. There were no subscribers in Baxter. How about in Union County? There were none. These were random, unsolicited mailings, bulk mailings to people that were detainees that they learned about on the website. Why does a publisher have a right to send unsolicited mail into a jail? Is that settled? That's a great question, and I can't answer it. I don't know. Thornburg v. Abbott talks about a right to do it when inmates want to subscribe. Did our Baxter case, you're saying that involved unsolicited as well? Totally. I guess that panel already said that there was a right. No, Baxter left that open. Left it open, okay. And then left open the difference between are we protecting the First Amendment rights of the inmates, as in Simpson, or now we're dealing just with a publisher right? Well, that's a great. There's no detainee testimony. There's no detainee subscriber. There was no effort to meet and talk with, you know. That is completely unresolved. The testimony at trial was that the expert witness, nor the director of HRDC, nor any of their lawyers had ever set foot in Union County before the first day of trial. They were asked that. Now, I had a separate factual question. Was there at some point an electronic reading media introduced? Is that in the trial record? There's a lot in the trial record about that. Okay. And that was at some point during this disputed period? It was, Your Honor. Within six months of the time this suit was filed, which was in October of 2017, Union County had already converted to an electronic digital system where all the mail that comes in gets scanned into a scanner and the detainees can see it back in their pods. And then by the time trial came, which was about a year ago, we had one iPad for every two detainees. We're a high tech jail. What was the record on whether the unsolicited publisher could take advantage of that or get his material? We argued that. We asked questions of the expert. We asked questions of the director. Have you ever tried to come down here, visit, send a postcard, send anything, talk to the sheriff, talk to the county judge, try to get your material on the system? And he said, no, it would be futile. I said, why do you say that? He said, because it's six years later and we're still here. I mean, I don't. Did the sheriff testify as to whether it would be allowed or not allowed? I understand they didn't ask, so that might be enough. But was there any evidence as to the jail's policy on that? The evidence along those lines were that the vendor, which is called City Telecoin, it has a roster of material that it has out there. But anybody else could deal with the vendor. In other words, can you put my material on there? But there were plenty of, I think the testimony was there's 60,000 titles of books. There's full books on there. There's all kinds of stuff on there. And as to the, so has this modified, was this, if this was in the record, is the letter postcard only policy changed then too? So if you're scanning in letter from mom that's three pages, that's just scanned and then the detainee can go read that? The detainee, the letter is scanned. The original is put in his or her property box. The detainee has a PIN and he or she can read his mail at any time. And that letter has been scanned into his mail file. So the policy is you can either have a letter scanned or a postcard come in, just postcard only. So now it's sort of a parallel. And that was in the record? Yes. And what happened is, and we had COVID in this time too. So what happened is when our case had just got started, like two years into our case, Baxter County case had been docketed first and it was moving along a little quicker. And so our case got stayed. We're both in Western District. Our case got stayed until the first resolution of the Baxter case, which was the remand that Judge Loken talked about. So after that, our case got put back on the docket. So in between that time, we had gone from a postcard only policy, six months later to where we had an electronic kiosk in every cell block. And then by the time we went to trial less than a year ago, every detainee has access to an iPad between 5 a.m. and 10.30 p.m. Is that a similar record in the Baxter case? No. That's another huge difference in Union County and Baxter County. In the record, you'll find that Union County is one of the top five jails in the state of Arkansas and always has been as far as jail standards. Baxter County is a much smaller venue, and quite frankly, it has not kept up with the digital world. Hence the book cart with the half a dozen torn up mail? The book cart, yes. So those records are just fundamentally different? They're fundamentally different. A good question is why we go into them, and Judge Hickey makes a footnote about that in her ruling on the 50B. But, you know, equitable relief was being sought. And so it was important for us to let the jury and the judge know, especially the judge, for equitable purposes. You made changes that have been approved elsewhere in the country. Of course. Which HRDC hates. Of course. Another thing they hated, and that was pointed out by Judge Hickey in her order, was the real motivation for coming after Union County in the first place was HRDC cherry picked Union County and Baxter County from their websites. They knew they had postcard only policies, so they flooded them with all this information unsolicited to random detainees so that they would get rejected so they could file these suits. And that's in Judge Hickey's order. It was obvious in the courtroom. What do you think policies change that HRDC doesn't like? You're talking about the iPad policy? Right. Yeah. Okay. No, they don't like that. Well, you adopt changes that require interest by a detainee. And you also take out the profit. You take out the subscription. That's right. It's free. Well, that's right. This is all about subscription. Because if they just go to the vendor and get added to the iPad, you mean, then nobody has to pay for it. Case over. I can't remember who wrote the Kate Gerardo Simpson case, but we're all dealing with something that we'll never deal with again. So somebody detained for three months doesn't get the benefit of a 200-page habeas ineffective assistance, a counsel manual. Like they need it. Is it in the record, the average length of stay at Union? It is. It is in the record. The record was that we have approximately 180 at all times. We may have one or two that are there for more than a year, but the vast majority are there from 30 to 60 days. They're mostly pretrial detainees. Some of them are federal. Except the three O.S. The three O.S. They come from the state penitentiary. And we only are allocated 11 of those at any one time, and we typically have nine. And they're housed separately. They don't intermingle with the detainees, which is why they could have newspapers, and they could have. They come with the state prison. Right. They're about to be released. Policy with respect to this question. They get to go home. They get furloughed. They can go home to visit their family and come back to the jail to serve. They cook meals, take care of the grounds. The people from the penitentiary can do that? They're three O.N.s. Oh, you mean they're like on the way out? They're on the way out. This is part of their re-indoctrination. Yeah, it's a re-indoctrination. I never got to tell you all the facts that were in the record that supported that we did not violate the Turner factors. But they're in there. The judge was correct. This was a jury question. That's why she denied summary judgment. That's why I didn't move for summary judgment. I knew there were facts, and I knew it was facts, so to speak. I didn't ask for summary judgment. Who asked? The plaintiffs asked for the jury trial? Plaintiffs moved for summary judgment. No, they asked for the jury trial too? And they asked for the jury trial. And you put on no evidence? Well, I cross-examined all their witnesses and cross-examined mine. They called your people? Right. A month before trial, the district court again asked HRDC, are you sure you want a jury trial? And they said, yeah. I mean, I guess it's easier for me to have a bench trial, but I didn't object, of course. But I'm way out of time. Thank you. Thank you. Mr. Paltz for rebuttal? Yes. Thank you, Your Honors. I think a few factual issues need clearing up. First of all, the outside kiosk system does not allow outside publications on it. Second, as Union County admitted in RFA 65, they do not accept publications. Wait, wait, wait. What do you mean by outside publications? They do not allow HRDC to have its materials scanned onto its kiosk system. That's in the record. Who doesn't allow that, the vendor? Union County. What are the 60,000 publications that are? Your Honor, I'm not sure that's not in the record. I thought he said that your people said they hadn't approached the vendor about being added to the system. Your Honor, we hadn't approached the vendor because there's no exhaustion requirement under Turner. There's no exhaustion requirement that our client has to go. Yeah, but that's a separate point from whether it would be allowed. You just came up and said we wouldn't be allowed on the system. They admitted that they wouldn't allow it to accept donations. They said they wouldn't accept donations of our publications. Are you talking about the vendor that provides the 60,000 electronic media? No, Your Honor. I don't know where the 60,000, that's not in the record. Where's the testimony that what you just said? If you look for a request for admission 65, they admitted that they do not accept donations of our material. What do you mean paper copies? Paper copies, yes, Your Honor. That's a different point. They also say that they do not scan publications onto the kiosks, which is a key difference between mailing a letter, which is uploaded on the kiosk, but publications and magazines are not uploaded onto the kiosk. And there's an inherently different right with a publication or a magazine. So your understanding of the record is either it's a letter from mom on the kiosk or a book, like an audible book or something, or a download. No, not even that, Judge Kelly. The record is clear on what the limited things are on the kiosk. It's letters from mom and then there's like some 2015 editions of the rules of civil procedure and the rules of criminal procedure. But there's also prisoners are allowed to have religious texts such as Bibles and Korans. But there is no audible book type of thing. I'm sorry, I misspoke when I said audible. I meant just a downloadable book. No, Your Honor, that's not in the record. And finally, I see my time has expired. If I could briefly say to Union, HRDC is a nonprofit that's in the record and undisputed. Thank you. Thank you, counsel. The case has been well briefed and argued and we'll take it under advisement.